48 F.3d 1222
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Terry R. SNYDER, Defendant-Appellant.
 No. 94-1242.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 24, 1995.
Decided March 9, 1995.
 
 Before POSNER, Chief Judge, and FAIRCHILD and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Defendant Terry R. Snyder pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. Sec. 922(g). The district court sentenced Snyder to 188 months' imprisonment to be served concurrently with the term of imprisonment imposed in state court for his conviction arising out of the same conduct,[1] to be followed by five years of supervised release. Snyder was subsequently resentenced to a prison term of 180 months. Snyder's court-appointed counsel filed a notice of appeal, but now seeks to withdraw because he considers an appeal without merit or possibility of success. See Anders v. California, 386 U.S. 738 (1967); United States v. Edwards, 777 F.2d 364 (7th Cir.1985). In his Anders brief, counsel asserts that the only challenges which Snyder could conceivably raise on appeal are two issues that were explicitly reserved for appeal in the plea agreement: 1) whether the district court properly denied Snyder's motion to dismiss the indictment based upon a theory of double jeopardy, and 2) whether the district court properly denied Snyder's motion for issuance of subpoena without prepayment of cost for the physician who treated the alleged victim. Under Circuit Rule 51(a), we notified Snyder of his attorney's motion, and Snyder responded. Because we are satisfied that counsel engaged in a thorough search of the record and because we find that there are no nonfrivolous issues for appeal, we grant counsel's motion to withdraw, and dismiss the appeal. Penson v. Ohio, 488 U.S. 75, 80 (1988); United States v. Eggen, 984 F.2d 848, 850 (7th Cir.1993).
 
 BACKGROUND
 
 2
 In October 1991, a federal grand jury returned a one-count indictment against Terry R. Snyder, charging him under 18 U.S.C. Sec. 922(g) with knowingly possessing a firearm that had travelled in interstate commerce after he had been previously convicted of a felony. According to the notice of prior convictions filed by the Assistant United States Attorney, Snyder had previously been convicted in Illinois state courts of three burglaries, each of which was committed on a different date. (Notice of Prior Convictions, R. at 7.) He had also been convicted of aggravated battery with a firearm; possession of that firearm is the subject of this case.
 
 
 3
 In October 1992, Snyder moved to dismiss the federal indictment on the basis that it constituted double jeopardy. Snyder argued that the federal prosecution arose out of the same weapon and circumstances as his earlier state conviction for aggravated battery with a firearm. The district court denied Snyder's motion. Noting that "it has long been clearly established that the constitutional ban on double jeopardy only applies to the same sovereign," Judge Mills found "no possible bar" to Snyder's being tried in federal district court "for a charge arising out of the same transaction used for his state conviction." United States v. Snyder, No. 91-30103 (C.D.Ill. Nov. 19, 1992) (denying motion for dismissal of indictment).
 
 
 4
 Also in October 1992, Snyder moved for the issuance of subpoenas for 14 individuals, including doctors and judges, whose testimony Snyder claimed was critical to his defense. Judge Mills denied the motion because Snyder failed to explain why the presence of these 14 persons was necessary to an adequate defense. Snyder sought reconsideration of the district court ruling and requested that subpoenas be issued for six occurrence witnesses and Dr. Richard Sallborn, who Snyder claimed would testify about defendant's psychological mindset at the time of the crime. Judge Mills agreed to allow three occurrence witnesses testify, but found no need for Dr. Sallborn's testimony because Snyder presented no legal authority showing that the mentality of a defendant is an element of self-defense. Snyder's counsel subsequently asserted that Dr. Sallborn was not a psychologist who would testify about Snyder's mental state, but rather was the treating physician at the emergency room of the hospital who would testify about the victim's violent conduct upon admission to the emergency room. Counsel claimed that the doctor's testimony was necessary and vital to Snyder's defense of self-defense. By showing the need to defend himself, Snyder apparently contemplated a defense of the weapon possession charge. Judge Mills disagreed, concluding that Snyder had failed to provide any legal authority demonstrating that the conduct of a victim after the occurrence of a crime constitutes an element of self-defense.[2]
 
 
 5
 On January 19, 1993, Snyder entered into a written plea agreement and stipulation of facts on the present charge, pleading guilty to possessing and firing a semi-automatic rifle during a dispute outside a Quincy, Illinois tavern on May 12, 1991.[3] In exchange for Snyder's guilty plea, the government recommended that he receive a downward adjustment of the applicable offense level for acceptance of responsibility, and that the applicable offense level not be increased for obstruction of justice when Snyder discarded the weapon after fleeing from the scene of the crime. Under Federal Rule of Criminal Procedure 11(a)(2), Snyder reserved the right to appeal (1) the denial of his October 1992 motion for dismissal of the indictment; and (2) the denial of his October 1992 motion for issuance of subpoena without prepayment of cost for Dr. Sallborn.
 
 
 6
 At Snyder's sentencing hearing in April 1993, the court determined that Snyder had reviewed the presentence report with his attorney and had no further objections. The court then sentenced Snyder to 188 months in prison and five years of supervised release, and imposed special conditions for supervision.[4] Snyder timely appealed.
 
 
 7
 In December 1993, this court on its own motion remanded the case to the district court for resentencing.[5]
 
 
 8
 At the resentencing hearing the following month, the district court set Snyder's applicable offense level at thirty[6] and his criminal history category at VI, resulting in a guideline range from 180-210 months, consistent with the mandatory minimum sentence of fifteen years that must be imposed under 18 U.S.C. Sec. 924(e) if the defendant has committed three prior violent felonies. Judge Mills sentenced Snyder to 180 months in the custody of the Bureau of Prisons and recommended that Snyder be placed in a facility with psychiatric and psychological mental health facilities and programs for his needs.
 
 DISCUSSION
 
 9
 We will grant an Anders motion only when we are satisfied that counsel has conscientiously examined the case, United States v. Kellum, 42 F.3d 1087, 1096 (7th Cir.1994) (citing Anders, 386 U.S. at 744), and that the potential issues on appeal are groundless in light of legal principles and rulings. Id. (citing United States v. Eggen, 984 F.2d 848, 850 (7th Cir.1993)).
 
 I. Double Jeopardy
 
 10
 One of the potential issues raised by counsel in his Anders brief, as well as Snyder in his response, is whether the district court erred in denying Snyder's motion to dismiss his indictment. Snyder contends that federal prosecutors placed him in double jeopardy by prosecuting him for the same conduct that he had previously been convicted of in state court. Snyder's argument, however, disregards the dual sovereignty doctrine which entitles separate sovereigns to prosecute a person for the same conduct if such conduct violates the laws of each. United States v. Zarnes, 33 F.3d 1454, 1470-71 (7th Cir.1994). The Supreme Court "has plainly and repeatedly stated that two identical offenses are not the 'same offense' within the meaning of the Double Jeopardy Clause if they are prosecuted by different sovereigns.' " United States v. Robinson, 42 F.3d 433, 434 (7th Cir.1994) (quoting Heath v. Alabama, 474 U.S. 82, 92 (1985)). Even if we assume that the offenses were the same, the State of Illinois and the United States are separate and distinct sovereign entities, and Snyder could be tried in federal district court for a charge stemming from the same conduct which resulted in his state conviction. We agree with Snyder's counsel that an appeal on this ground would be frivolous.
 
 II. Issuance of Subpoena
 
 11
 Snyder's counsel has also addressed the only other issue he considers as a possible basis for an appeal: the district court's denial of Snyder's motion for issuance of a subpoena without prepayment of cost to compel the presence of Dr. Richard Sallborn, the physician who apparently treated the victim upon his admission to the emergency room. Snyder argued that Dr. Sallborn's testimony about the victim's violent conduct in the emergency room was vital to his defense of self-defense. The district court, however, denied Snyder's motion because Snyder failed to cite any authority to suggest that the conduct of a victim after the occurrence of a crime is an element of self-defense.
 
 
 12
 Federal Rule of Criminal Procedure 17(b) requires a court to subpoena a witness for an indigent defendant when "the presence of the witness is necessary to an adequate defense." The trial judge has "wide discretion" in deciding whether to issue a given subpoena under Rule 17(b), United States v. Chapman, 954 F.2d 1352, 1362 (7th Cir.1992), and we cannot say that the denial here constituted an abuse of that discretion. The district court could reasonably have concluded that the doctor's testimony about the actions of the victim upon arrival at the hospital was irrelevant to the charge of possession of a weapon, under the circumstances. Snyder had already been convicted of aggravated battery with a firearm. We agree with counsel that the court acted within its discretion in denying the issuance of a subpoena, and that an appeal on this basis would be meritless.
 
 III. Guilty Plea Hearing
 
 13
 The plea hearing transcript demonstrates that the district court followed the procedures outlined in Federal Rule of Criminal Procedure 11 to ensure that Snyder's guilty plea was knowingly and voluntarily given. The court determined that Snyder understood the nature of the charges brought against him, the factual basis for the plea, the mandatory minimum and maximum sentences which could be imposed, and the constitutional rights that would be waived by pleading guilty. Furthermore, Snyder stated that he was not threatened nor coerced into pleading guilty. There is no potentially meritorious issue for appeal arising out of Snyder's guilty plea hearing.
 
 IV. Sentencing
 
 14
 Finally, Snyder's sentencing does not raise an arguable basis for appeal. The transcripts of the sentencing hearings shows that Snyder was given the procedural protections provided in Federal Rule of Criminal Procedure 32. Defense counsel received the presentence report before the first hearing and was given an opportunity to comment upon that report.[7] The court addressed Snyder personally and determined that he had the opportunity to read and discuss the report with his attorney. At both hearings, the court also informed Snyder of his right to appeal the sentence. We find no possible meritorious issue for appeal concerning Snyder's sentencing.
 
 CONCLUSION
 
 15
 Based upon our review of the record, we hold that there is no other basis upon which Snyder may challenge his conviction or his sentence. We therefore GRANT counsel's motion to withdraw from this appeal, and DISMISS the appeal as frivolous.
 
 
 
 [1]
 In September 1991, Snyder was tried and convicted of aggravated battery with a firearm in the Adams County (Illinois) Circuit Court
 
 
 [2]
 Snyder then moved for reconsideration, attaching portions of the trial transcripts from the state court case, in which Dr. Sallborn testified that the victim who Snyder shot was abusive, combative, and had an alcoholic odor to his breath. According to Snyder, the doctor's testimony was needed to show that the victim's violent behavior would have caused Snyder to believe that his life was endangered and that he acted in self-defense
 
 
 [3]
 Snyder initially pleaded not guilty, then entered into plea negotiations with the government and changed his plea
 
 
 [4]
 The court classified Snyder as an armed career criminal under U.S.S.G. Sec. 4B1.4(b)(3)(A) due to his prior criminal record and current conviction. One possible condition under that guideline specifies that defendant use or possess the firearm in connection with "a crime of violence," as defined under Sec. 4B1.2
 
 
 [5]
 This court's two-sentence order did not elaborate upon the ruling. We note, however, that in 1993, the Supreme Court held that the application of Sec. 4B1.2 was controlled by newly amended commentary to the Guidelines. Stinson v. United States, 113 S.Ct. 1913, 1920 (1993). The revised commentary provides that the term "crime of violence" does not apply to the offense of unlawful possession of a firearm by a felon. Thus, Snyder's Sec. 922(g) offense should not have been considered a crime of violence under Sec. 4B1.2, and he should not have been classified under Sec. 4B1.4(b)(3)(A). See United States v. Lykes, 999 F.2d 1144, 1147 (7th Cir.1993)
 
 
 [6]
 The court classified Snyder under Sec. 4B1.4(b)(3)(B), which does not contain the term "crime of violence."
 
 
 [7]
 At resentencing, defense counsel waived any updating of the presentence report because there had been no substantial change of circumstance between the dates of the two sentencing hearings